PIGGLY WIGGLY RETAIL OPERATIONS, INC. v. PROMOTIONAL
SALES COMPANY, INC.

No. 7211SC388

(Filed 2 August 1972)

1. Parties § 2— real party in interest — assertion on appeal — stipulation

Defendant is in no position to assert on appeal that plaintiff
had no right to bring the action because it is not the real party in
interest where it was stipulated that all parties are properly before
the court and the court has jurisdiction of the parties and subject
matter, and that there is no question of misjoinder or nonjoinder of
parties.

2. Contracts § 27— trading stamps — failure to redeem — breach of contract

The evidence supported findings by the trial court that defendant,
the seller of trading stamps, breached a contract with plaintiff by
removal and failure to replenish premium displays at plaintiff's
stores, refusal to redeem trading stamps plaintiff had purchased from
defendant, and failure to otherwise service plaintiff's stores in accordance with its agreement.

APPEAL by defendant from *Clark, Judge,* 25 October Civil
Session, Superior Court, LEE County.

This action was instituted by plaintiff to recover
$61,681.59 for which it alleges defendant is liable by reason of
defendant's failure to redeem 34,267.6 units of trading stamps
under the provisions of an agreement between the parties.
Defendant admitted that it distributed its trading stamps to
plaintiff for a valuable consideration, but denied any breach
of contract by it. By way of counterclaim, defendant seeks
$77,000 in damages resulting from plaintiff's allegedly wrongful seizure and withholding of defendant's merchandise and
destroying defendant's business. The parties agreed that the
matter could be heard by the judge without a jury. The court
found facts and made conclusions thereon awarding plaintiff
damages and dismissing defendant's counterclaim. Defendant
appealed.

*George M. McDermott and O. Tracy Parks, III, for plaintiff appellee.*

*J. Benjamin Miles for defendant appellant.*

MORRIS, Judge.

[1] By assignments of error Nos. 1 and 2 defendant contends that plaintiff has no standing to bring this action because it is not the real party in interest. The record contains a stipulation of the parties wherein it is said:

"5. All parties are properly before the Court and the Court has jurisdiction of the parties and of the subject matter.

6. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties."

Defendant is not now in a position to raise this question for the first time on appeal. These assignments of error are based on exceptions to paragraphs 15 and 16 of the court's findings of fact and conclusion of law No. 4. Defendant contends the findings of fact are not substantiated by competent evidence. On the contrary, there is in the record before us sufficient competent evidence upon which to base the findings of fact.

[2] All other assignments of error are directed to the findings of fact and conclusions thereon. We are of the opinion that all of the findings of fact are based on competent evidence and that they are sufficient to support the conclusions of law and award made by the court.

In our view, the evidence is plenary that defendant terminated the agreement between the parties. It is undisputed that plaintiff and defendant entered into an agreement with Progressive Stores, predecessor in title to plaintiff, under which Progressive would purchase defendant's trading stamps and dispense them to its customers as they purchased merchandise from Progressive. Defendant agreed to furnish displays and redeem the stamps for merchandise selected by the customer from the displays or from the catalogue furnished by defendant. Defendant's *modus operandi* was slightly different from some other trading stamp operations in that it provided for redemption of stamps at Progressive's various stores. A representative of defendant called on the stores on Monday, picked up the orders for customers together with the stamps to be redeemed, and delivered the premium to the store the following Monday to be picked up by the customer. Order forms and envelopes were provided for this purpose. If the desired item

was in the defendant's display at the store, the customer could obtain it from the store by turning in to the store the required number of stamps and paying the required sales tax. Defendant would then replenish the display of redemption merchandise. The parties had no problems until defendant heard that Progressive planned to sell its assets to plaintiff. Defendant then became concerned as to whether its stamp program would be retained or replaced by another. Defendant's President testified that in the original conference with Progressive, he was promised 90 days notice of termination of the agreement. Evidence of plaintiff was that no agreement was made with respect to notice and that plaintiff's representative made no such agreement. Defendant was never notified of a sale nor that there was any plan whatever to replace its stamp program with another. However, on or about 6 January 1969, defendant, through its President and sole stockholder, Herbert Meadows, notified its personnel to pick up all displays and discontinue picking up orders for redemption merchandise. Whereupon, defendant's representatives removed the displays from some of plaintiff's stores. In some instances, defendant's representatives called upon a store, removed the displays and returned stamps previously picked up for redemption and left orders scheduled to be picked up without explanation. From that time defendant refused to service the stores of plaintiff. Subsequently plaintiff put in the Green Bax stamp program. Green Bax agreed with plaintiff to redeem the defendant's stamps or issue its own in equivalent values therefor. This was done and Green Bax kept a record of all stamps issued by defendant taken in by it and the values thereof and stored them for plaintiff at its warehouse. Green Bax claims no interest in the stamps. Its representative testified unequivocally that the stamps were not the property of Green Bax but that they were being stored for plaintiff at plaintiff's request. The representative also stated that it expected payment for the stamps when delivered to plaintiff. There was evidence that defendant had no redemption centers other than the stores purchasing and issuing its stamps. There was also evidence that plaintiff had made demands upon defendant for redemption of the stamps outstanding either for merchandise or the cash equivalent. This was alleged in the complaint and admitted in the answer.

Upon the facts found, the court made the following conclusions of law:

"1. The defendant breached its agreement with the plaintiff in the following material respects:

(a) removal and failure to replenish premium displays at plaintiff's stores.

(b) Refusal to fill outstanding orders for premiums for which trading coupons had been previously delivered to defendant from and after January 6, 1969.

(c) Failure to accept orders for premiums and redeem trading coupons presented for redemption at plaintiff's stores from and after January 6, 1969.

(d) Failure to otherwise service plaintiff's stores in accordance with its agreement.

2. The plaintiff did not breach the agreement with the defendant.

3. The question of whether the restrictive language set forth on the Hearts Desire trading coupons constitutes an enforceable limitation on their transfer or an improper restraint of trade, is not presented for decision in this action, in that here plaintiff is ' . . . the person to whom (the coupons were) originally issued' and in any event is not seeking enforcement of defendant's obligations under its trading coupons held by the plaintiff; but rather is seeking recovery of damages sustained by reason of defendant's failure to comply with material terms of the Agreement between the parties.

4. The evidence establishes that by reason of defendant's breach of contract the plaintiff has sustained actual loss and damages at least equal to the purchase price it paid to the defendant for the 33,452.3 units of unredeemed Hearts Desire trading coupons now held by the plaintiff, and the 815.25 units previously delivered to the defendant, totaling $61,681.59. The plaintiff is entitled to recover said amount from the defendant with interest at the rate of 6% per annum from January 6, 1969, less a credit of $1,000.00 against the principal amount for the trading coupons initially furnished to the plaintiff by the defendant.

5. The defendant is not entitled to recover any sum from the plaintiff by reason of its counterclaim, such loss or

damage, if any, as defendant may have sustained being the result of its own conduct and breach of contract."

Upon the conclusions made, the court awarded damages to plaintiff.

The defendant contends that the court should have concluded that if defendant breached the contract it was an anticipatory breach and further that no cause of action could arise, until a customer had presented the stamps collected to a redemption center and redemption was denied.

As to the breach of the contract the court found the facts, resolving conflicts in the evidence in favor of plaintiff. We reiterate that our study of the record reveals that the findings are supported by the evidence. We agree with the court that the plaintiff is the party to whom the stamps were originally issued and the action is not to enforce the defendant's obligations under the stamps held by plaintiff, but to recover damages sustained by reason of defendant's failure to comply with material terms of the agreement between the parties. Defendant has cited several cases, primarily involving Sperry and Hutchinson litigation to prevent trading in its stamps by others as a commercial venture for profit. We find the cases cited by defendant to be inapposite and clearly distinguishable.

Affirmed.

Judges BROCK and HEDRICK concur.